```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
```
NEIL RHODES, individually and as a shareholder
of ALARM SPECIALISTS, INC., suing on behalf
of himself and all shareholders of ALARM
SPECIALIST, INC. similarly situated and in the
right of ALARM SPECIALIST, INC.,

                      Plaintiff(s),

    -against-

GARY DAVIS and ALARM SPECIALIST, INC.,

                      Defendant(s).
```
------------------------------------------------------------X
```

**REPORT AND RECOMMENDATION**
08-Civ-9681 (GBD)(GAY)

TO THE HONORABLE GEORGE B. DANIELS, United States District Judge:

      Plaintiff Neil Rhodes ("Rhodes") seeks payment of its attorneys' fees, costs, expert fees, and related expenses incurred due to defendant Gary Davis's ("Davis") breach of a Stipulation of Discontinuance between the parties (the "Stipulation"), dated September 3, 2008.

      In accordance with paragraph 2 of the Stipulation, Your Honor held in a Memorandum Decision and Order dated September 27, 2012, that plaintiff was entitled to "reasonable attorneys' fees arising out of this litigation in an amount to be determined at a Magistrate Judge's Inquest." Docket ("Dkt.") # 17, at 6. Your Honor referred this matter to the undersigned to report and recommend on the amount of reasonable costs and attorneys' fees. Id. For the reasons that follow, I respectfully recommend that Your Honor award plaintiff attorneys' fees and costs against defendant in the amount of $319,116.32.

I.  **CALCULATION OF ATTORNEY'S FEES**

The Second Circuit has held that even in a fee application based on a contract, the determination of what constitutes a reasonable fee is left to the discretion of a judge. See McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993) (holding that in a fee application based on contract, the judge determines the amount of attorneys' fees owed.); see also GMC v. Villa Marin Chevrolet, Inc., 240 F. Supp.2d 182, 185 (E.D.N.Y. 2002) ("Regardless of whether fees are awarded pursuant to statute or pursuant to contract, the determination of what is a reasonable award is within the sound discretion of the trial court."). Further, the Second Circuit has held that the standard when determining the amount of attorneys' fees awarded pursuant to a contract, is the reasonableness of the award. See Carco Group, Inc. v. Maconachy, No. 11–cv–4445, 2013 WL 2157875, at *12 (2d Cir. May 21, 2013) ("Thus, the touchstone for an award of attorneys' fees pursuant to a contract is reasonableness."); see also F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987).

In calculating the reasonable attorney's fees, the traditional starting point is the "lodestar" amount, which results in a presumptively reasonable fee. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 189-90 (2d Cir. 2008). The court determines the lodestar amount by multiplying a reasonable hourly rate by the reasonable number of hours expended on the case to produce the "presumptively reasonable fee." Id. at 186. In setting the reasonable hourly rate, "a court must determine what a reasonable paying client would be willing to pay for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." Torres v. City of New York, No. 07 Civ.

2

3473, 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008). In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits and other materials. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). Upon calculation of the "presumptively reasonable fee" amount, the Court should "make any appropriate adjustments to arrive at the final fee award." Adorno v. Port Auth. of New York and New Jersey, 685 F. Supp.2d 507, 511 (S.D.N.Y. 2010). Moreover, the Second Circuit has cautioned, "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1139, 1148 (2d Cir. 1983) (internal citations and quotations omitted).

### A. REASONABLE HOURLY RATE

A reasonable hourly rate is the rate a "paying client would be willing to pay," bearing in mind that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Determination of the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel [, which] may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." See Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005) (citations omitted). The hourly rates, however, "should be 'current rather than historic.'" Underdog Trucking, L.L.C. v. Verizon Serv. Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011) (quoting Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006), cert. denied, 549 U.S. 1211

3

(2007)) (inner citation and quotation marks omitted). The Second Circuit has stated that, in determining what rate a paying client would be willing to pay, the district court should assess case-specific considerations, including the factors enumerated in the case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by, Blanchard v. Bergeron, 489 U.S. 87, 92–93 (1989).[1] See Arbor Hill, 522 F.3d at 186-90.

In its 2010 decision in Perdue v. Kenny A. ex rel. Winn, 130 S.Ct. 1662 (2010), the Supreme Court acknowledged the lodestar approach over the Johnson factors approach, reasoning that the calculated lodestar figure "'includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.'" Perdue, 130 S.Ct. at 1667, 1673 (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 566 (1986)). Further, the Court advised that the Johnson factors could be applied in the "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id. at 1673. Notwithstanding the Supreme Court's decision in Perdue, the Second Circuit has

---

[1] The Johnson factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In addition to the Johnson factors, the Arbor Hill court ruled that the district court should also consider other factors such as : the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation. See Arbor Hill, 522 F.3d at 184.

continued to equally apply the Johnson factors along with the lodestar approach to determine what constitutes a presumptively reasonable fee. See, e.g., Konits v. Karahalis, 409 Fed.App'x. 418, 422 (2d Cir. 2011) (summary order); Green v. City of New York, 403 Fed.App'x. 626, 629 (2d Cir. 2010) (summary order).  At bottom, however, the party seeking a fee award "has the burden of showing by satisfactory evidence–in addition to the attorney's own affidavits–that the requested hourly rates are the prevailing market rates." Farbotko, 433 F.3d at 209 (citations and internal quotation marks omitted).

Here, according to the affirmation of attorney Andrew Greene and contemporaneous time records, seven attorneys billed time to this matter; Andrew Greene ("atty. Greene"), who was listed as a partner; Paul T. Vink ("atty. Vink"), listed as a senior counsel; Daniel M. Kolko ("atty. Kolko"), listed as a senior counsel; Clifford J. Bond ("atty. Bond"), listed as a senior counsel; Thomas C. Landrigan ("atty. Landrigan"), listed as an associate; John V. D'Amico ("atty. D'Amico"), listed as an associate; and Brian D. Porch, Jr. ("atty. Porch"), listed as an associate.  Atty. Greene is a commercial partner admitted to practice law in 1974.  He founded the Andrew Greene & Associates law firm in 1976.  He is a graduate of Brooklyn Law School and George Washington University.  Atty. Vink is a commercial litigator with 25 years of practice.  He is a 1987 graduate of Brooklyn Law School.  He was admitted to practice law in the State of New York in 1987.  Atty. Kolko is a 1977 graduate of Albany Law School.  He is a commercial litigator with over 30 years of experience.  He was admitted to practice law in the State of New York in 1978.  Atty. Bond is a 1990 graduate of Georgetown University Law Center.  He is a litigator with more than 20 years of experience.  He was

admitted to practice law in the State of New York in 1990. Atty. Landrigan is a 2000 honors graduate of St. John's Law School. He also holds an accounting degree from the University of North Carolina. He was admitted to practice law in the State of New York in 2000. Atty. D'Amico is a 2000 graduate of Fordham Law School. He was admitted to practice law in the State of New York in 2000. Atty. Porch is a commercial litigator with more than 10 years of experience. He is a 2001 graduate of Emory Law School. He was admitted to practice law in the State of New York in 2001.

The attorneys seek compensation at the following rates: atty. Greene at the rate of $425 - $450 per hour; atty. Kolko at the rate of $400 per hour; atty. Landrigan at the rate of $300 per hour; atty. Bond at the rate of $385 per hour; atty. D'Amico at the rate of $300 per hour; atty. Vink at the rate of $385 per hour; and atty. Porch at the rate of $300 per hour. The attorneys have provided contemporaneous time records and information as to their experiences. They have also provided the results of a 2011 National Law Journal Billing Rate Survey. These rates however are for large size firms; and thus, are not helpful herein since counsel are from a small firm.

In considering the appropriate hourly rate, I have considered all of the factors in Johnson and Arbor Hill and I have relied on my own knowledge of the rates charged by practitioners in the relevant community. See McDonald *ex rel.* Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.")(citations omitted). Defendant has neither challenged the reasonableness of the rates sought by plaintiff's counsels nor shown that the requested rates are not "in line with those prevailing in the community." See Blum v. Stenson, 465

U.S. 886, 896 n. 11 (1984). Moreover, plaintiff's requested billing rates are in fact within the range of rates awarded to the lawyers "of reasonably comparable skill, experience and reputation" in the Southern District of New York. Id.; see, e.g., Underdog Trucking, 276 F.R.D. at 110 (awarding an hourly rate of $550 per hour to a 1964 graduate partner, $221 per hour to a 2006 graduate associate, and $208.25 per hour to a 2009 graduate associate in a breach of contract and racial discrimination case); Reiter v. Metro. Transp. Auth. of N.Y., No. 01-CV-2762, 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) ("[W]ithin the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district.")

Accordingly, after considering all the factors, I respectfully conclude that the requested rates are reasonable in light of the case-specific Johnson factors. As such, I respectfully conclude that the attorneys should be compensated at the following rates: atty. Greene at the rate of $425 per hour for work done prior to July 2010 and $450 per hour for work done after July 2010; atty. Kolko at the rate of $400 per hour; atty. Landrigan at the rate of $300 per hour; atty. Bond at the rate of $385 per hour; atty. D'Amico at the rate of $300 per hour; atty. Vink at the rate of $385 per hour; and atty. Porch at the rate of $300 per hour.

### B. NUMBER OF HOURS REASONABLY EXPENDED

To determine the number of reasonable hours expended, contemporaneous time records, affidavits, and other materials must support the prevailing party's fee application. Chambless, 885 F.2d at 1058; New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1147-48. The number of hours should be reduced for excessive, redundant, vague, or otherwise unnecessary hours. Quarantino v. Tiffany &

7

Co., 166 F.3d 422, 425 (2d Cir. 1999). "In so doing, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks and citation omitted). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Cesario v. BNI Constr., Inc., 07 Civ. 8545, 2008 WL 5210209, at *7 (S.D.N.Y. Dec. 15, 2008) (citing Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

    Here, the contemporaneous time record submitted by the attorneys show that they billed the following hours: atty. Greene billed a total of 151.5 hours; atty. Kolko billed 311.7 hours; atty. Landrigan billed 220.9 hours; atty. Bond billed 91.1 hours; atty. D'Amico billed 79.5 hours; atty. Vink billed 69.8 hours; and atty. Porch billed 2.3 hours. In reviewing the time record, however, I have identified numerous vague entries that should be discounted from the total number of hours claimed by some of the attorneys.[2] For example, atty. Landrigan repeatedly billed the clients for such activities as client and office conferences, review of emails, "related matters," litigation issues and related matter, review of papers, discovery, and correspondence with counsels. He however failed to provide descriptions of the subjects of the conferences, emails, or correspondence. See, e.g., the billings for Oct. 2, 2008; Oct, 21, 2008; Dec. 10, 2008; July 6, 2009; Nov. 11, 2008; Apr. 16, 2009; Apr. 21, 2009; June 1, 2009; June 17, 2009. Similarly, atty. Greene, atty. Kolko, and atty. Vink made numerous vague entries such as conferences with each other, emails, conferences with the clients, conferences with

---

[2] The Court found certain calculations made by plaintiff to be inaccurate

opposing counsel, review emails, review continued discovery issues, multiple emails with clients and opposing counsel, review file documents, and legal research. See, e.g., billings for Nov. 26, 2008; Dec. 16, 2008; Apr. 17, 2009; June 1, 2009; July 9, 2009; July 10, 2009; July 14, 2009; Mar. 18, 2010; Mar. 24, 2010; Mar. 25, 2010; Nov. 22, 2010; Jan. 12, 2011; Jan. 17, 2011; Feb. 16, 2011; Feb. 17, 2011.  The attorneys provide no explanations for what documents they reviewed, what issues they researched, what work they performed in addressing the litigation issues, what the emails relate to, or what constitutes litigation and discovery issues.  Simply stated, these billing descriptions are vague and warrant a reduction of the hours claimed.

"[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing New York State Ass'n for Retarded Children, 711 F.2d at 1146); see also DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague descriptions of some of the work performed and the necessity of the work); Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG, No. 04 Civ. 3600, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing fee request by 25% to account for block billing, vagueness, and excess).

Defendant's opposition papers essentially argue that the September 27, 2012 ruling herein that plaintiff is entitled to attorneys' fees is in error.  Defendant argues that plaintiff is not entitled to an award of attorneys' fees because plaintiff did not seek specific performance in the complaint.  However, the September 27, 2012 decision did

not limit attorneys' fees to a claim of specific performance. Said ruling states that "[p]laintiff is entitled to reasonable attorneys' fees arising out of this litigation in an amount to be determined at a Magistrate Judge's Inquest." Memorandum Decision and Order at 7. The only direct challenges made by plaintiff to the hours claimed by plaintiff in January 2010, February 2010, January 2011, and February 2011 are on the basis that they did not relate to specific enforcement of the Stipulation herein. I find that the hours claimed are for work arising out of the litigation herein.

Thus, based on all of the foregoing factors, I respectfully recommend reducing atty. Landrigan's request for fees by 25 percent; reducing atty. Greene, atty. Kolko, and atty. Vink's requests for fees by 10 percent; and calculating compensation using the hourly rates noted above as follows:

| Andrew Greene | 7.58 hours x $425 | = $ 3,221.50 |
|---|---|---|
| Andrew Greene | 128.77 hours x $450 | = $ 57,946.50 |
| Daniel M. Kolko | 280.53 hours x $400 | = $ 112,212.00 |
| Thomas C. Landrigan | 165.70 hours x $300 | = $ 49,710.00 |
| Clifford J. Bond | 91.10 hours x $385 | = $ 35,073.50 |
| John D'Amico | 79.50 hours x $300 | = $ 23,850.00 |
| Paul T. Vink | 62.82 hours x $385 | = $ 24,185.70 |
| Brian Porch | 2.30 hours x $300 | = $ 690.00 |

Total attorneys' fees                                $ 306,889.20

## II. COSTS

Additionally, plaintiff request for costs in the amount of $12,227.12. These costs are for a variety of routine items such as filing, photocopying, postage, telephone, parking, and Westlaw research. I respectfully find that these costs, to which defendant has not specifically objected, are reasonable and compensable under paragraph 2 of the Stipulation, which explicitly entitles plaintiff to "legal fees" incurred in enforcing the Stipulation. See, e.g., ATC Healthcare Servs., Inc. v. Personnel Solutions, Inc., No. 01-CV-762, 2007 WL 1893205, at *4 (S.D.N.Y. June 29, 2007) (awarding such costs under contractual attorneys' fee provision); Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00-CV-2474, 2001 WL 1842042, at *9 (S.D.N.Y. May 30, 2001) (same).

Accordingly, I respectfully recommend that plaintiff be awarded costs in the amount of $12,227.12.

## III. EXPERTS FEES

Plaintiff also seeks experts fees in the amount of $23,891.25. There is, however, no basis to award plaintiff experts fees. Paragraph 2 of the Stipulation does not specifically provide for the award of expert fees. Moreover, the case was referred to me for the determination of the amount of reasonable attorneys' fees. Attorneys' fees cannot be reasonably interpreted to encompass experts fees. See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 303 (2006) (noting that the term "attorneys' fees," standing alone, is generally not understood as encompassing expert fees); Amerisource Corp. v. Rx USA Intern. Inc., No. 02-CV-2514, 2010 WL 2160017, at *14 (E.D.N.Y. May 26, 2010) (noting that attorneys' fees, court costs, and collection fees cannot be "reasonably interpreted to encompass expert fees.").

As such, I respectfully conclude that plaintiff should not be awarded experts fees.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff be awarded attorneys' fees and costs in the amount of $319,116.32; representing attorneys' fees in the amount of $ 306,515.35 and costs in the amount of $12,227.12.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b) (1) (c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable George B. Daniels, United States District Court, Southern District of New York, 500 Pearl Street, New York, NY 10007, and to the chambers of the undersigned at United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

Dated: July 1, 2013         Respectfully Submitted:
White Plains, New York

_____
GEORGE A. YANTHIS, U.S.M.J.